# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DANELLE RENE PIXLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-CV-00914-NKL ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

## ORDER

Plaintiff Danelle Rene Pixler appeals the Commissioner of Social Security's final decision denying her applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Court affirms the determination in part and reverses it in part.

## I.  Background

Pixler alleges that she became disabled on 12/1/2012 due to limitations from an L4-L5 fusion in her back, spinal decompression, numbness in her hands and lower arms, hyperthyroidism, and acid reflux. She filed her initial applications for disability insurance and SSI benefits on 10/10/2014. The ALJ held a hearing on 8/30/2016 and subsequently issued a decision denying benefits on 10/26/2016. The Appeals Council declined review in a letter dated 9/29/2017. Pixler appealed to this Court.

### A. Medical History

Pixler's disability claim is based primarily on limitations resulting from an L4-L5 fusion in her back, spinal decompression, numbness in her hands and lower arms, hyperthyroidism, and acid reflux. Pixler alleges that her back pain, as well as numbness and tingling of the extremities, began after an exercise session in December 2012. Tr. 447–48. The pain radiated to her right ankle and calf, and symptoms were aggravated by bending, changing positions, daily activities, lifting, pushing, sitting, standing, and walking. Tr. 436.

An MRI of the lumbar spine on 10/15/2013 revealed moderate to severe lumbar spondylosis with findings worst at L4-L5, where there was moderate to severe central canal stenosis caused by a combination of disc bulge, mild spondylolisthesis, and marked facet arthrosis. Moderate to severe subarticular lateral recess narrowing and moderate bilateral foraminal stenosis were also noted. Tr. 445.

X-rays of the lumbar spine on 7/21/2014 revealed grade 1 degenerative spondylolisthesis at L4-L5 with the degree of anterolisthesis similar in flexion and extension; moderate or greater facet osteoarthritis from L4-S1; and moderate disc degeneration at L1-L2 and L2-L3 with moderate to marked L4-L5 disc degeneration. Tr. 372.

On 9/11/2014, Pixler underwent L4-L5 decompression and fusion with transforaminal interbody graft and pedicle screws from L4-L5 bilaterally. Tr. 304. CT of the lumbar spine on 9/12/2014 showed interval L4-L5 posterior spinal fixation, partial right facetectomy, and interbody disc spacer placement and fusion with improved alignment at L4-L5, as well as likely moderate residual degenerative trefoil type central spinal stenosis at L4-L5. Tr. 313–14. Pixler was discharged on 9/15/2014 with a roller walker to use. Tr. 293. She was told to avoid pushing,

pulling, or lifting greater than 10 lbs. Tr. 294. X-rays of the lumbar spine on 9/29/2014 showed satisfactory postoperative changes at L4-L5. Tr. 381.

Following surgery, Pixler was prescribed alternating prescriptions of Oxycodone, Percocet, Morphine, Lyrica, and physical therapy. By October 2014 she reported only moderate back pain, and that her leg symptoms had largely dissipated. Her back pain was slowly improving. X-rays showed hardware in good position. Tr. 376. She was asked to start weaning herself off of narcotics. Tr. 387, 398.

In December 2014, Pixler reported increased symptoms in her head, neck, and leg, and described having cramps in her right leg. X-rays showed hardware in good position. Pixler was encouraged to engage in muscle strengthening. Valium, Oxycodone, and Medrol Dosepak were prescribed. Tr. 402.

Pixler had a physical therapy evaluation in January 2015. Tr. 345. PT was planned twice weekly for six weeks. Pixler returned for seventeen additional sessions between 1/13/2015 and 3/16/2015.

In March 2015, Dr. Woodrow examined Pixler. She had recurrent symptoms in her right leg with numbness, which worsened with activity. Tr. 410. X-rays of the lumbar spine showed stable posterior hardware fixation and degenerative changes without acute osseous abnormality. Tr. 414.

In April 2015, Dr. Woodrow saw Pixler again. Pixler reported that her back pain was well-controlled but that recurrent symptoms in her lower extremities were worsening. Still, she reported feeling much improved over her preoperative status. She rated her pain a 4/10. Tr. 482. A CT of the lumbar spine revealed no significant change in multilevel degenerative disease resulting in moderate trefoil type central spinal stenosis at L4-L5 with additional mild levels of stenosis. Tr.

484. X-rays of the lumbar spine showed prior posterior spinal fixation at L4-L5 with intact hardware, minimal anterolisthesis, and mild multilevel degenerative disc disease resulting in mild disc space narrowing at L1-L2 and L2-L3. Tr. 487.

Dr. Carder examined Pixler on 4/14/2015; her gait was stable. Diagnoses were reflux esophagitis, hypothyroidism, and intervertebral disc disorder of lumbar region with myelopathy. Prilosec was increased, and Oxycodone was continued. Tr. 541. Pixler saw Dr. Carder again on 5/12/2015 and 6/9/2015. She was diagnosed with hypothyroidism, intervertebral disc disorder of lumbar region with myelopathy, and restless leg syndrome. Requip and Oxycodone were prescribed. Tr. 546.

Pixler presented to the ED on 6/19/2015 and 6/23/2015 with left neck pain, which she rated a 6/10. Tr. 493, 503. Exams on both occasions revealed tenderness of the left lateral neck. Tr. 496, 505. A CT of the neck showed subtle nonspecific edema/inflammation involving the left neck soft tissues. Tr. 508. Cellulitis and neck pain were diagnosed. Augmentin, Naprosyn, Tobaxin, and a Medrol Dosepak were prescribed. Tr. 498–99, 509. Dr. Carder's examination of Pixler on 6/26/2015 for ED follow-up revealed tenderness over the mid-portion of the left sternomastoid muscle with reduced extension and rotation to the right due to "pulling" in her left neck. Diagnoses were neck pain, cervicalgia, and iron deficiency anemia due to chronic blood loss. Prenatal vitamins and Oxycodone were prescribed. Tr. 547.

Pixler saw Dr. Carder an additional thirteen times between 7/21/2015 and 7/5/2016 for neck and back pain. In September 2015, Pixler developed a lump on the left lateral aspect of her neck. Tr. 553. Cervical lymphadenitis was diagnosed. Pixler was referred to an ENT, and Augmentin was prescribed. Tr. 553. The ENT and Dr. Carder thought that Pixler's neck lump was a muscle spasm, probably due to cervical spine disease. Tr. 555. Throughout this time,

diagnoses remained consistent, including GERD with esophagitis, hypothyroidism, lumbar disc herniation with cord compression, iron deficiency anemia due to chronic blood loss, and restless leg syndrome. Tr. 540, 545, 548, 549, 553, 554, 556, 557. Morphine SR, Neurontin, Lyrica, prenatal vitamins, and Oxycodone were prescribed. Tr. 540, 542, 545, 548, 549, 551, 552, 554, 555, 556, 557. Lyrica helped relieve Pixler's neck pain. Tr. 555. GERD was controlled with medication, and Pixler's back pain was controlled with Oxycodone. Tr. 551, 553. Requip worked for her restless legs, but it made her drowsy the next day. Tr. 549. Pixler reported that walking around helped a little to relieve symptoms. Tr. 551.

### B. Expert Opinion

Dr. Keffer, opined, based on a 4/18/2015 consultative examination of Pixler, that all range of motion values were normal. Tr. 422–23. Dr. Keffer noted that Pixler had normal muscle strength in both upper and lower extremities; a normal gait; no palpable muscle spasms; bilateral lumbar paravertebral muscle tenderness to palpation; intact sensation to light touch in all extremities; negative straight leg test bilaterally; normal reflexes; ability to walk on heels and toes; normal tandem walking; and ability to stand and hop on one extremity bilaterally. Pixler was able to squat and rise, get up and down from the exam table, and ambulate without difficulty. Tr. 419, 421.

### C. The Hearing before the ALJ

Pixler testified that she is unable to work because, despite having surgery, she still experiences "a lot of spine pain" and pain in her hips, waist, and legs. Tr. 45–46. She also experiences numbness and weakness in her hands and legs. Tr. 49–50, 52. Pixler stated that the pain limits her ability to sit for long periods of time, stand, and walk and impacts her ability to focus and sleep. Tr. 47, 49–50. She stated that a gallon of milk is about all that she is able to lift.

5

Tr. 51. She stated that she does the laundry and washes dishes, though it takes her a long time. Tr. 57. She grocery shops once a week, goes to church, visits with family, watches TV, and reads. Tr. 59. Pixler testified that although she has medicines that help with the pain, the medications also cause other issues. Tr. 45. She takes Lyrica for her nerve pain, but it causes her to feel a spinning sensation. Tr. 47. She also experiences vomiting and diarrhea four or five times a week, often at night. Tr. 52

Mary Ann Lumpy testified as a VE at the administrative hearing. Tr. 62. The ALJ posed a hypothetical question, which assumed an individual of Pixler's age, education, and past work experience. The individual could perform light work as defined by the regulations, with the following exceptions: the individual would be allowed to sit or stand alternatively at will provided she was not off task more than 10% of the work period; overhead reaching is limited to occasionally with the bilateral upper extremities; gross manipulation is limited to frequently with the bilateral upper extremities; fingering—that is fine manipulation of items no smaller than the size of a paperclip—is limited to frequently with the bilateral upper extremities; the individual can only occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds; stooping is limited to occasionally; the individual can never crouch, kneel, or crawl; the individual can have no exposure to unprotected heights and should avoid all exposure to unshielded moving mechanical parts; and work must be limited to simple routine and repetitive tasks in a work environment free of fast-paced production requirements. Tr. 67–68. The VE testified that such an individual could not return to the Pixler's prior work but could perform the light unskilled positions of small parts assembler, bench assembler, and plastic hospital product assembler. Tr. 68–69. The VE testified

that her testimony was consistent with the DOT, but that the DOT does not reference any jobs regarding the sit/stand option, absenteeism, or direction of reaching. Tr. 73.

### D. The ALJ Decision

The ALJ determined Pixler suffered from severe impairments of degenerative disc disease of the lumbar spine, status-post lumbar fusion, and history of spondylolisthesis and anterolisthesis; restless leg syndrome; and anemia. Tr. 16. The ALJ found that Pixler was not under a "disability" as defined in the Act, 20 CFR Part 404, Subpart P, Appendix 1, and concluded that she has the residual functional capacity:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could sit or stand alternatively at will, provided she would not be off task more than 10% of the workday. She is limited to occasional overhead reaching, bilaterally. She is able to bilaterally handle objects that is gross manipulation frequently. She is able to bilaterally finger objects that is fine manipulations of items no smaller than the size of a paperclip frequently. She is able to frequently feel. The claimant could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She could never crouch, kneel or crawl, and occasionally stoop. She must avoid all exposure to unshielded moving mechanical parts and unprotected heights. Work limited to simple, routine and repetitive tasks; in a work environment free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession; involving only simple work-related decisions; with few, if any, work place changes.

Tr. 19. Relying on VE testimony, the ALJ concluded that Pixler was unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that Pixler could perform. Tr. 24.

## II. Legal Standard

The Court's review of the ALJ's decision is limited to a determination of whether it is supported by "substantial evidence in the record as a whole." *Milam v. Colvin*, 794 F.3d 978, 983

(8th Cir. 2015). "Substantial evidence" is less than a preponderance but enough that a reasonable mind might find it adequate to support the ALJ's conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision. But as long as substantial evidence in the record supports the ALJ's decision, the Court may not reverse it simply because substantial evidence also exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

## III. Discussion

Pixler argues that the Commissioner's decision must be reversed because the ALJ's RFC at step four of the five-step sequential evaluation is not supported by substantial evidence and the ALJ failed to sustain his burden at step five.

### A. RFC

Pixler argues that the RFC is not supported by substantial evidence because there are no medical opinions assessing her functional limitations. She asserts that the ALJ should have ordered an additional consultative examination to fully develop the record.

But "[t]he absence of opinion evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding." *Henry v. Colvin*, 2014 WL 2095228, at *12 (E.D. Mo. May 20, 2014) (citing *Cox*, 495 F.3d at 619–20); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (concluding fact that medical evidence was silent regarding work-related restrictions "should not be held against the ALJ when there is medical evidence that supports the ALJ's decision"). An ALJ is permitted to issue a decision without obtaining additional medical evidence, so long as the RFC is supported by substantial evidence, including "some medical evidence of the claimant's ability to function in the workplace." *Henry*, 2014 WL

2095228, at *12 (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. Dec. 28, 2017).

Here, the ALJ's RFC was supported by substantial evidence, which included a physical consultative examination[1] assessing Pixler's physical functioning. Tr. 22. During Dr. Keffer's examination, Pixler had normal muscle strength in both upper and lower extremities, full grip strength, a negative straight leg raise, and full range of motion of the lumbar and cervical spine. Tr. 21, 422–23. Pixler was able to squat and rise from a seated position, stand and hop on one extremity, and get on and off of an examination table without difficulty. Tr. 21, 420. She was able to pick up items, carry and handle light objects, grasp a pen, and write a sentence. Tr. 17, 419–20, 422–23.

The ALJ's RFC was further supported by other medical evidence discussed in his decision, including multiple post-surgical MRIs and x-rays showing post-operative improvements. A September 29, 2014 x-ray of the lumbar spine showed intact hardware fixation, corrected grade 1 anterolisthesis at L4-L5 with osteophyste formation, and satisfactory post-operative changes and alignment. Tr. 20–21, 293, 381. An April 2015 MRI showed no significant change in multilevel degenerative disease. Tr. 484. A post-surgical EMG was negative and showed no evidence of neuropathy or radiculopathy. Tr. 21, 394. In addition, Pixler retained full muscle strength, demonstrated normal, unassisted gait, and had normal sensation on examination. Tr. 21, 293, 337, 345, 419, 496.

---

[1] Under the agency's regulations, Dr. Keffer's consultative examination is not incomplete simply because it does not contain a "medical opinion"; it is still medical evidence. *See* 20 C.F.R. §§ 404.1519n(c)(6); 416.919n(c)(6). The ALJ reasonably gave great weight to Dr. Keefer's findings, which were based on a detailed physical examination of Pixler, but reduced the weight because he did not provide a function-by-function assessment. Tr. 22.

The ALJ also cited other evidence of record to support the RFC, including Pixler's improvement with treatment, daily activities, and own statements. Post-surgery, Pixler reported no complications and stated she was doing well. Tr. 21, 293, 376. Her medications controlled her symptoms. Tr. 21, 337, 410, 482, 540, 549, 551, 553, 555. She was advised to taper her medications and was able to do so. Tr. 21, 387, 410, 549. Pixler has remained independent with mobility and activities of daily living. Tr. 21, 345. Despite reporting pain during some appointments, Pixler has reported feeling strong, Tr. 482, and having no symptoms of back pain during others, Tr. 495. Because this evidence provides sufficient support for the ALJ's RFC, the ALJ was not required to obtain an additional physical consultative examination.

Next, Pixler argues that the RFC is not supported by substantial evidence because it does not account for her non-severe impairments—depression, neck pain, hypothyroidism, and gastrointestinal issues. Specifically, Pixler asserts that the failure to include limitations related to concentration, persistence, or pace or her ability to interact appropriately with others due to her depression was reversible error. However, an ALJ may omit alleged impairments from a hypothetical question posed to a VE when "there is no medical evidence that these conditions impose any restriction on functional capabilities" or "when the record does not support the claimant's contention that h[er] impairments significantly restrict h[er] ability to perform gainful employment." *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (internal quotations omitted); *see also Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir.1998) (omitting mental limitations where such limitations were non-severe was without error).

Pixler herself reported that the symptoms related to her hypothyroidism do not limit her ability to work. Tr. 16–17; 416. Despite her 2013 diagnosis of mild depression, Pixler has denied having depressive symptoms, feelings of guilt, anxiety, memory loss, mental disturbance, suicidal

ideation, hallucinations and paranoia. Tr. 279, 437. She has demonstrated normal attention and concentration and reported no difficulty following instructions or dealing with stressful situations or changes to her routine. Tr. 206–7, 218–19, 419. Still the ALJ considered the evidence in the record pertaining to her depression, neck pain, hypothyroidism, and gastrointestinal issues and reasonably determined that the impairments are non-severe, *i.e.*, they do not cause more than minimal limitation and therefore do not significantly restrict her ability to perform gainful employment. Tr. 16–18. For example, the ALJ noted that despite Pixler's alleged neck pain, a neurological examination showed that she had normal finger to nose rapid alternating movements, full grip strength, and full range of motion of the cervical spine, and that she was able to pick up an item, grasp a pen, carry and handle light objects, and write a sentence. Tr. 17, 419–20, 422–23. With respect to Pixler's mild depression, the ALJ noted Pixler's normal psychological evaluations and consistently normal mood and affect. Tr. 17, 280, 337, 495, 506, 540. The ALJ, nevertheless considered these conditions in combination and limited Pixler to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, to account for alleged difficulties in concentration, persistence, and pace due to distractions from her chronic pain systems. Tr. 19.

Pixler also argues that reversal is warranted at step four because the ALJ failed to assess the RFC on a function-by-function basis and erroneously assessed exertional level first, making it impossible to determine how much walking, sitting, and standing she can perform. But the Court does "not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Thus, while an RFC described only in "general terms" will warrant reversal, the ALJ "need not make specific findings in the RFC for every functional limitation included in 20 C.F.R. § 404.1545(b)." *Johnston v. Colvin*, 2016 WL 7104855, at *4

(W.D. Mo. Dec. 5, 2016). *Compare Pfitzner v. Apfel*, 169 F.3d 566, 568 (8th Cir. 1999) (requiring remand where RFC was described in only "general terms" and failed to "specify the details" of plaintiff's limitations), *with Depover v. Barnhardt*, 349 F.3d 563, 567 (8th Cir. 2003) (affirming decision where RFC omitted sitting, standing, and walking limitations because inclusion of other specific limitations implied ALJ's finding of no limitation for those functions). So long as substantial evidence supports the ALJ's findings remand is not warranted. *Depover*, 349 F.3d at 568.

Here the ALJ did not simply describe the RFC in "general terms." The ALJ's decision states that he found that Pixler could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 19, 22 (describing light work as involving "lifting, carrying, pushing, or pulling 20 pounds occasionally and ten pounds frequently; standing and walking up to six hours in an eight hour day and sitting for up to six hours in an eight hour workday")). The ALJ then articulated an RFC including multiple, specific limitations on a function-by-function basis. In particular, the ALJ concluded that Pixler must be able to sit or stand alternatively at will, and that she could: reach bilaterally overhead only occasionally, climb ramps or stairs occasionally, and stoop occasionally but never climb ladders, ropes or scaffolds, crouch, kneel, or crawl. Tr. 22. The ALJ also limited Pixler's gross and fine manipulations and imposed numerous environmental restrictions. Tr. 22. The ALJ then explicitly stated that Pixler's subjective complaints "d[id] not warrant any additional limitations" beyond those established in the RFC, making clear his findings that Pixler has no other sitting, standing, or walking limitations. Tr. 22. This finding is supported by substantial evidence, including evidence in the record that Pixler was advised to remain active

to help her symptoms, that she demonstrates normal, unassisted gait, and Pixler's own statement that walking helped to relieve ongoing symptoms in her legs. Tr. 21, 376, 419, 496, 551.

Although Pixler asserts that a limitation to "sedentary" work would have been consistent with Dr. Yalamanchali's recommendation immediately following surgery that she "[a]void pushing, pulling, or lifting more than 10 pounds," Tr. 294, the ALJ noted that this recommendation was given just after Pixler's back surgery. She was not given ongoing restrictions and was advised to "remain active" to help her symptoms. Tr. 22, 376; *see Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (finding lack of functional restrictions on claimant's activities inconsistent with disability claim where treating physicians recommended increased physical exercise). Moreover, Dr. Yalamanchali's recommendation is not consistent with more recent observations of Pixler's primary care physician that she has "[n]ormal muscle strength and tone," Tr. 545. It also contradicts Pixler's own statement that she can lift and carry "15 pounds occasionally" as well as Dr. Keffer's determination, based on a more recent physical examination, that she has "normal" muscle strength in both upper and lower extremities and normal mobility. Tr. 419, 422–23; *see Flynn v. Astrue*, 513 F.3d 788, 793–94 (8th Cir. 2008) (finding physician's observation that claimant had normal muscle strength and mobility was substantial evidence to support ALJ's determination that she could lift 20 pounds occasionally and ten pounds frequently consistent with the definition of light work).

Thus, the ALJ's RFC is supported by substantial evidence of the record as a whole.

## B. Step Five Determination

Pixler argues that the ALJ failed to sustain his burden at step five because he relied upon VE testimony in making his determination without sufficiently resolving apparent conflicts between the VE's testimony and the occupational descriptions in the DOT.

At step five the burden shifts from the claimant to the ALJ to show that there exists a significant number of jobs in the national economy that can be performed by a person with the claimant's RFC and vocational skills. *Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010). VEs are considered reliable sources of occupational evidence. But when there is an apparent conflict between a VE's testimony and the occupational descriptions in the DOT, the ALJ is required to elicit a "reasonable explanation" to resolve the conflict before relying on the VE to support a disability determination. SSR 00-4p (Dec. 4, 2000); POMS DI 25015.030(B)[2]; *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014). A VE's assurance that her testimony is consistent with DOT, does not absolve the ALJ of this duty. *Moore*, 769 F.3d at 990; *see also Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (remanding where "the record d[id] not reflect whether the VE or the ALJ even recognized the possible conflict"); *Coates v. Colvin*, 2015 WL 4610991, at *2 (W.D. Mo. July 30, 2015) (finding fact that the VE "vaguely reassured the ALJ that she had relied on some combination of the DOT and her education, training" insufficient). *Contra Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir.2014) (finding ALJ's duty met where in response to extensive questioning regarding inconsistencies, the VE offered evidence of her personal observations of the requirements of the proposed jobs and cited to a professional journal to support her recommendation). Absent a reasonable explanation, VE testimony that conflicts with the DOT

---

[2] While POMS does not have legal force, it is a persuasive interpretation by the Commissioner of statutory and regulatory law. *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004), *Taylor v. Barnhart*, 399 F.3d 891, 897 (8th Cir. 2005).

"does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Kemp*, 743 F.3d at 632.

Here, the ALJ found that Pixler is limited to "occasional overhead reaching, bilaterally." Tr. 19. In her testimony, the VE recommended three types of work that, according to her, could be performed with those limitations: "small parts assembler," "bench assembler," and "plastic hospital assembler." However, the Selected Characteristics of Occupations Defined (SCO)[3], a companion volume to the DOT, lists all of these jobs as requiring reaching "[f]requently," meaning that it "[e]xists from 1/3 to 2/3 of the time." *See* DOT 706.684-022 (small parts assembler); DOT 706.684-042 (bench assembler); DOT 712.687-010 (plastic hospital assembler). When asked by the ALJ whether her testimony was consistent with the DOT, the VE confirmed that it was. The VE testified that the DOT did not reference any jobs regarding direction of reaching, and that as such her testimony was "based on [her] professional experience." Tr. 73.

However, the VE provided no personal observations or further explanation to support her opinion that positions requiring *frequent* reaching were consistent with the hypothetical limiting Pixler to *occasional* overhead reaching. Tr. 73. The VE's vague assurances that she relied on some combination of the DOT and her professional experience failed to provide a reasonable explanation to resolve the conflict. *See Coates*, 2015 WL 4610991, at *2. Thus, the ALJ failed to show that Pixler can perform any of the recommended jobs with her current RFC.

The ALJ also limited Pixler to fingering items "no smaller than the size of a paperclip frequently." However, the record does not reflect whether the VE or the ALJ even recognized the

---

[3] *Moore*, 769 F.3d at 989, n. 2 ("Social Security Ruling 004–p dictates that '[i]n making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.'").

possible conflict between this limitation and the VE's testimony. As Pixler identifies, each of the positions identified by the VE require the frequent use of hands to manipulate, position, or otherwise fasten small parts. For example, the DOT's description of a small parts assembler includes "using hands, tweezers, or tongs" to position parts as well as using "bolts, screws, clips, [or] cements" to fasten parts together. DOT 706.684-022. A position as bench assembler includes similar assembly tasks using rivets, "bolts and cotter pins," DOT 706.684-042, while a position as a plastic hospital assembler involves the assembly of small products, including "hypodermic syringes, catheters, and intravenous apparatus," DOT 712.687-010. While paperclips admittedly vary in size, common sense dictates that bolts, screws, and other components of the small products to be assembled in each of these positions may very well include items smaller than the size of a paperclip. This apparent conflict should have been clarified on the record. Without further explanation from the VE, there is not substantial evidence to support the existence of other jobs in the economy that Pixler can perform. *See Kemp*, 743 F.3d at 632. Accordingly, the ALJ failed to meet his burden at step five of the sequential evaluation process. The ALJ's step five determination is reversed.

**III.    Conclusion**

The Commissioner's determination is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this Order.


                                            s/ Nanette K. Laughrey
                                            NANETTE K. LAUGHREY
                                            United States District Judge

Dated:  August 7, 2018
Jefferson City, Missouri

16